```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

```
WILLIAM TERRY,                     )
                                   )
      Petitioner,                  )
                                   )
vs.                                )        No. 04-3020-B/P
                                   )
DAVID MILLS,                       )
                                   )
      Respondent.                  )
                                   )
```

```
                       ORDER OF DISMISSAL
           ORDER DENYING CERTIFICATE OF APPEALABILITY
                             AND
           ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
```

Petitioner William Terry, Tennessee Department of Correction prisoner number 124893, an inmate at the West Tennessee State Penitentiary in Henning, Tennessee, filed a pro se petition pursuant to 28 U.S.C. § 2254 on December 14, 2004 and paid the habeas filing fee. The Court issued an order on April 12, 2005 directing the respondent to file the state-court record and respond to the petition. On April 25, 2005, respondent filed a motion to dismiss the petition as time barred, along with portions of the state-court record and a motion for reconsideration with respect to that aspect of the April 12,2005 order directing him to file the entire state-court record. The Court issued an order on October 26, 2005 denying the motion to dismiss the petition as time barred and

directing the respondent, for the second time, to file the state-court record and respond to the petition. On December 20, 2005, respondent filed a supplemental response to the petition, accompanied by the state-court record.

I.  ANALYSIS OF THE MERITS

   A.  <u>Statute of Limitations</u>

        In his supplemental response, respondent urges reconsideration of the Court's prior ruling that the petition is timely.[1] As previously stated, the running of the § 2254 limitations period commenced on the expiration of the time for filing a notice of appeal from the state-court judgment on January 3, 2002. 10/26/05 Order at 4. Pursuant to 28 U.S.C. § 2244(d)(2), the running of the limitations period was tolled while the postconviction petition was pending in state court. In its previous order, the Court stated that "[t]he record before the Court does not demonstrate the precise date on which the petition was filed." <u>Id.</u> at 5. Relying on Tenn. Sup. Ct. R. 28, § 2(G), the Court assumed that the petition was filed on July 11, 2002, the date on which Terry signed it. <u>Id.</u> Respondent contends that the Court has misapplied the Tennessee rule and that the running of the limitations period commenced on July 23, 2002, the date on which it was received by the Shelby County Criminal Court. Upon reconsideration, it appears that respondent is correct that the

---

        [1]    The legal standards relevant to this discussion are found at pp. 3-6 of the October 26, 2005 order.

Tennessee "mailbox rule" is effective only when a prisoner's papers "are not received by the clerk of the court until after the time fixed for filing." Tenn. Sup. Ct. R. 28, § 2(G). As Terry's postconviction petition was plainly timely under Tennessee law, he is not entitled to the benefit of the "mailbox rule" and his postconviction petition was filed on July 23, 2002. By that time, two hundred one (201) days of the § 2254 limitations period had expired.

The Tennessee Court of Criminal Appeals affirmed the dismissal of Terry's postconviction petition on December 17, 2003, Terry v. State, No. W2003-00218-CCA-R3-PC (Tenn. Crim. App. Dec. 17, 2003), and the Tennessee Supreme Court denied permission to appeal on March 22, 2004.[2] The running of the limitations period recommenced at the expiration of the time for filing a petition for a writ of certiorari concerning the postconviction petition, on June 21, 2004. Only one hundred sixty-four (164) days of the limitations period remained at that time. Terry's petition was signed on December 13, 2004, one hundred seventy-four (174) days after the running of the limitations period commenced and it is, therefore, untimely.

The one-year limitations period applicable to § 2254 motions is subject to equitable tolling. Griffin v. Rogers, 308

---

[2]     The October 26, 2005 order stated, incorrectly, that the decision of the Tennessee Court of Criminal Appeals was issued on December 17, 2004 and the Tennessee Court of Criminal Appeals denied permission to appeal on March 22, 2005. 10/26/05 Order at 2, 6.

F.3d 647, 652-53 (6th Cir. 2002); see also Dunlap v. United States, 250 F.3d 1001, 1004 (6th Cir. 2001) (equitable tolling also applies to § 2255 motions). Five factors determine the appropriateness of equitably tolling a statute of limitations:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

Dunlap, 250 F.3d at 1008.[3]

The Sixth Circuit has stated that "equitable tolling relief should be granted only sparingly." Amini, 259 F.3d at 500; see also Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003); Jurado v. Burt, 337 F.3d 638, 642 (6th Cir. 2003).

> Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. . . . Absent compelling equitable considerations, a court should not extend limitations by even a single day.

Graham-Humphreys v. Memphis Brooks Museum, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000); see also King v. United States, 63 Fed. Appx. 793, 795 (6th Cir. Mar. 27, 2003); Johnson v. U.S. Postal Serv., No. 86-2189, 1988 WL 122962 (6th Cir. Nov. 16, 1988) (refusing to apply equitable tolling when pro se litigant missed filing deadline

---

[3]    This five-factor standard is identical to the test used to determine whether equitable tolling is appropriate in other contexts, including employment discrimination cases. Amini v. Oberlin College, 259 F.3d 493, 500 (6th Cir. 2001) (citing Dunlap); Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998).

by one day). Thus, ignorance of the law by pro se litigants does not toll the limitations period. Price v. Jamrog, 79 Fed. Appx. 110, 112 (6th Cir. Oct. 23, 2003); Harrison v. I.M.S., 56 Fed. Appx. 682, 685-86 (6th Cir. Jan. 22, 2003); Miller v. Cason, 49 Fed. Appx. 495, 497 (6th Cir. Sept. 27, 2002) ("Miller's lack of knowledge of the law does not excuse his failure to timely file a habeas corpus petition."); Brown v. United States, 20 Fed. Appx. 373, 374 (6th Cir. Sept. 21, 2001) ("Ignorance of the limitations period does not toll the limitations period."); cf. Jurado, 337 F.3d at 644-45 (lawyer's mistake is not a proper basis for equitable tolling).[4]

Terry has not suggested that he is entitled to equitable tolling, and it appears that he cannot satisfy his burden of demonstrating that equitable tolling would be appropriate in this case. Terry has not explained his decision to delay the filing of a postconviction petition.[5] Although Terry may perhaps lack knowledge of the law, or may have miscalculated the time period for filing a timely § 2254 petition, the law is clear that those facts do not entitle him to equitable tolling.

---

[4]    See also Cobas v. Burgess, 306 F.3d 441 (6th Cir. 2002) ("Since a petitioner does not have a right to assistance of counsel on a habeas appeal . . . , and because an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations . . . , we are loath to impose any standards of competency on the English language translator utilized by the non-English speaking habeas petitioner.").

[5]    Because he entered a guilty plea, Terry presumably waived the right to take a direct appeal. He has not explained why he did not seek to withdraw his guilty plea.

Accordingly, the Court GRANTS respondent's motion to dismiss the petition as time barred.

Notwithstanding a determination as to the time barred nature of Terry's petition, the Court will proceed to address the merits of petitioner's claim inasmuch as the respondent has moved to dismiss the petition as without basis and this analysis was not undertaken in its previous order.

B.   The Merits of Petitioner's Claim

   1.   Legal Standards

The standard for reviewing a habeas petitioner's constitutional claims on the merits is enunciated in 28 U.S.C. § 2254(d). That section provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This Court must determine whether the state court adjudications of the claims that were decided on the merits were either "contrary to" or an "unreasonable application of" "clearly established" federal law as determined by the United States Supreme Court. This

Court must also determine whether the state court decision with respect to each issue was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

> a.   § 2254(d)(1)

The Supreme Court has issued a series of decisions setting forth the standards for applying § 2254(d)(1).[6] In (Terry) Williams v. Taylor, 529 U.S. 362, 404 (2000), the Supreme Court emphasized that the "contrary to" and "unreasonable application of" clauses should be accorded independent meaning. A state-court decision may be found to violate the "contrary to" clause under two circumstances:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. Accordingly, in either of these two scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's "contrary to" clause.

Id. at 405-06 (citations omitted); see also Price v. Vincent, 538 U.S. 634, 640 (2003); Lockyer v. Andrade, 538 U.S. 63, 73 (2003);

---

[6]   By contrast, there is a dearth of caselaw concerning the standards for applying § 2254(d)(2).

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).[7] The Supreme Court has emphasized the narrow scope of the "contrary to" clause, explaining that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." <u>Williams</u>, 529 U.S. at 406; <u>see also</u> <u>id.</u> at 407 ("If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity.").

A federal court may grant the writ under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." <u>Cone</u>, 535 U.S. at 694; <u>see also</u> <u>Andrade</u>, 538 U.S. at 75; <u>Williams</u>, 529 U.S. at 409.[8] "[A]n unreasonable application

---

[7]     The Supreme Court has emphasized that this standard "does not require citation of our cases—indeed, it does not even require <u>awareness</u> of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam) (emphasis in original).

[8]     Although the Supreme Court in <u>Williams</u> recognized, <u>in dicta</u>, the possibility that a state-court decision could be found to violate the "unreasonable application" clause when "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," 529 U.S. at 407, the Supreme Court expressed a concern that "the classification does have some problems of precision," <u>id.</u> at 408. The <u>Williams</u> Court concluded that it was not necessary "to decide how such 'extension of legal principle' cases should be treated under § 2254(d)(1)," <u>id.</u> at 408-09, and, to date, the Supreme Court has not had occasion to revisit the issue. <u>See</u> <u>Williams v. Coyle</u>, 260 F.3d 684, 699-700 (6th Cir. 2001), <u>cert. denied</u>, 536 U.S. 947 (2002).

of federal law is different from an incorrect application of federal law." Williams, 529 U.S. at 410.[9] "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.[10]

Moreover, § 2254(d)(1) refers to "clearly established" federal law, "as determined by the Supreme Court of the United States." This provision "expressly limits the source of law to cases decided by the United States Supreme Court." Harris v. Stovall, 212 F.3d 940, 944 (6th Cir. 2000). As the Sixth Circuit explained:

> This provision marks a significant change from the previous language by referring only to law determined by the Supreme Court. A district court or court of appeals no longer can look to lower federal court decisions in

---

[9]   See also Andrade, 538 U.S. at 75 (lower court erred by equating "objectively unreasonable" with "clear error"; "These two standards, however, are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) (holding that the lower court "did not observe this distinction [between an incorrect and an unreasonable application of federal law], but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)."); Cone, 535 U.S. at 698-99 ("For [a habeas petitioner] to succeed . . . , he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."); Williams, 529 U.S. at 411 ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

[10]   See also Brown v. Payton, 544 U.S. 133, 147 (2005) ("Even were we to assume the '"relevant state-court decision applied clearly established federal law erroneously or incorrectly,"' . . . there is no basis for further concluding that the application of our precedents was 'objectively unreasonable.'") (citations omitted).

> deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.

Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1999) (citing 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4261.1 (2d ed. Supp. 1998)); see also Harris, 212 F.3d at 944 ("It was error for the district court to rely on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d)."). Finally, in determining whether a rule is "clearly established," a habeas court is entitled to rely on "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

### b. § 2254(d)(2)

There is almost no case law about the standards for applying § 2254(d)(2), which permits federal courts to grant writs of habeas corpus where the state court's adjudication of a petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." In a decision applying this standard, the Supreme Court observed that § 2254(d)(2) must be read in conjunction with 28 U.S.C. § 2254(e)(1), which provides that a state court's factual determinations are presumed to be correct unless rebutted by clear and convincing evidence. Miller-El

10

v. Dretke, 125 S. Ct. 2317, 2325 (2005).[11]  It appears that the
Supreme Court has, in effect, incorporated the standards applicable
to the "unreasonable application" prong of § 2254(d)(1). Rice v.
Collins, 126 S. Ct. 969, 976 (2006) ("Reasonable minds reviewing
the record might disagree about the prosecutor's credibility, but
on habeas review that does not suffice to supersede the trial
court's credibility determination."). That is consistent with the
approach taken by the Sixth Circuit, which stated, in an
unpublished decision, that

> a federal habeas court may not grant habeas relief under
> § 2254(d)(2) simply because the court disagrees with a
> state trial court's factual determination. Such relief
> may only be granted if the state court's factual
> determination was "objectively unreasonable" in light of
> the evidence presented in the state court proceedings.
> Moreover . . . , the state court's factual determinations
> are entitled to a presumption of correctness, which is
> rebuttable only by clear and convincing evidence.

Young v. Hofbauer, 52 Fed. Appx. 234, 236 (6th Cir. Dec. 2, 2002)
(citing 28 U.S.C. § 2254(e)(1));[12] see also Stanley v. Lazaroff, 01-
4340, 2003 WL 22290187, at *9 (6th Cir. Oct. 3, 2003); Jackson v.
Holland, No. 01-5720, 2003 WL 22000285, at *7 (6th Cir. Aug. 21,
2003) ("Though the Supreme Court has not yet interpreted the
'unreasonable determination' clause of § 2254(d)(2), based upon the
reasoning in Williams, it appears that a court may grant the writ

---

[11]     But cf. Rice v. Collins, 126 S. Ct. 969, 974 (2006) (recognizing that
it is unsettled whether there are some factual disputes where § 2254(e)(1) is
inapplicable).

[12]     See also Sumner v. Mata, 449 U.S. 539, 546-47 (1981) (applying
presumption of correctness to factual determinations of state appellate courts).

if the state court's decision is based on an objectively
unreasonable determination of the facts in light of the evidence
presented during the state court proceeding.") (citing <u>Torres v.
Prunty</u>, 223 F.3d 1103, 1107-08 (9th Cir. 2000)).

       2.   <u>Application to Petitioner's Claim</u>

      In his only claim for relief, Terry asserts that his
trial counsel rendered ineffective assistance, in violation of the
Sixth Amendment, in connection with the negotiation and entry of
his guilty plea to the offense of aggravated sexual battery. Terry
raised this issue in his postconviction petition, and the Tennessee
Court of Criminal Appeals rejected it on the merits:

> At the post-conviction hearing, Petitioner testified
> that he did not understand the proceedings surrounding
> his plea submission hearing. During plea negotiations,
> Petitioner initially agreed to plead guilty to rape. The
> trial court, however, rejected this plea agreement
> because rape was not a lesser-included offense of the
> offense of rape of a child. As a result of further
> negotiations, Petitioner believed that he entered a plea
> of guilty of sexual battery, not aggravated sexual
> battery, the offense for which he was ultimately
> convicted. Petitioner said that his counsel never
> discussed the elements of aggravated sexual battery with
> him, and that he never signed any "paperwork" indicating
> that he pleaded guilty to this offense. Petitioner
> explained that he was on medication at the time of the
> plea submission hearing which made him feel sleepy and
> "spaced out." Petitioner said that his counsel never
> asked him whether he should order a mental evaluation.
> Petitioner said that his counsel only visited him twice
> while he was in jail awaiting trial and that his counsel
> never responded to any of his numerous letters.
>
> On cross-examination, Petitioner admitted that he
> did not tell his counsel that he was taking medication at
> the time of the plea submission hearing and that he never
> suggested that his counsel should request a mental

evaluation. Petitioner also insisted that the DNA test taken as a result of the charged offense indicated that there was only a fifty percent possibility that he was the father of the twelve-year-old victim's baby.

Mr. Gosnell testified that he thoroughly explained the elements of the charged offense to Petitioner who had difficulty understanding that he could be charged with the offense of rape of a child even though his sexual relationship with the twelve-year-old victim was consensual. Mr. Gosnell also explained the elements of aggravated sexual battery which formed the basis for Petitioner's plea agreement and met with Petitioner several times during the pendency of his trial. Although Mr. Gosnell explored potential defenses with Petitioner, he did not feel any were applicable. The DNA tests reflected that there was a 99.9% possibility that Petitioner was the father of the victim's child, and Petitioner had paid child support to the victim for a year prior to his arrest for the offense of rape of a child.

After he received the DNA results, Mr. Gosnell asked the district attorney to reduce the charges against Petitioner, but this effort was initially unsuccessful. Eventually, however, the State offered a plea agreement to Petitioner whereby Petitioner would plead guilty to rape with a recommended sentence of nine years. Because Petitioner was initially facing a sentencing range of fifteen to twenty-five years for rape of a child, Mr. Gosnell advised Petitioner to accept the plea agreement. After the trial court rejected the plea agreement, Petitioner then agreed to plead guilty to aggravated sexual battery with the same recommended sentence.

Mr. Gosnell said that Petitioner had never shown any signs of mental illness or drug-related problems during the period of his representation. He said that Petitioner worked every day and lived "a normal life" prior to his incarceration. Petitioner did not tell Mr. Gosnell that he was taking Elavil at the time of the plea submission hearing, but Petitioner did not appear to be under the influence of medication at the hearing and appeared to understand all of the proceedings. Petitioner also never raised an issue concerning any mental problems he might have.

At the plea submission hearing, the trial court questioned Petitioner as required by Rule 11 of the Tennessee Rules of Criminal Procedure. The trial court reviewed the elements of the offense of aggravated sexual battery, and Petitioner responded that he understood the nature of the charges against him. Petitioner said that he understood that by pleading guilty he was giving up his right to a trial by a jury and his right to testify. Petitioner also said that he understood he was giving up the right to appeal his conviction by entering a plea of guilty. Petitioner said that he was entering his plea of guilty freely and voluntarily without any threats or promises.

The post-conviction court found that Petitioner understood the ramifications of entering a plea of guilty and that his plea was freely and voluntarily given. In addition, the post-conviction court found that Petitioner understood the proceedings, and that his counsel thoroughly investigated and explained the charges against him. The post-conviction court found that Petitioner was competent at the time he entered his plea of guilty and found no evidence that Petitioner was mentally incompetent at the time of the offense. The post-conviction court found that Petitioner entered into the plea agreement "to avoid receiving greater punishment if found guilty at trial."

. . . .

In his appeal, Petitioner points out that he and his counsel presented conflicting testimony concerning the effectiveness of counsel's assistance prior to and during the plea submission hearing as well as the voluntary nature of his plea of guilty. In essence, Petitioner disagrees with the trial court's assessment of the weight and credibility of the evidence. Petitioner argues that only he could know what was going on in his mind during the plea submission hearing. As a result, he asserts that any conflicts in the testimony should be resolved in his favor. We cannot agree with this argument because it is contrary to well-settled case law that the weight and credibility of the witnesses' testimony are entrusted to the post-conviction court as the trier of fact. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Based on a careful review of the record, we do not find that the evidence preponderates against the post-conviction court's finding that Petitioner's plea was voluntarily

and knowingly entered and that his counsel rendered
effective assistance of counsel.

Terry v. State, slip op. at 2-3, 4, in Addendum 4.

A claim that ineffective assistance of counsel has
deprived a habeas petitioner of his Sixth Amendment right to
counsel is controlled by the standards enunciated in Strickland v.
Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's
> assistance was so defective as to require reversal of a
> conviction or death sentence has two components. First,
> the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors
> so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth
> Amendment. Second, the deficient performance prejudiced
> the defense. This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable. Unless a
> defendant makes both showings, it cannot be said that the
> conviction or death sentence resulted from a breakdown in
> the adversary process that renders the result unreliable.

To demonstrate deficient performance by counsel, a
petitioner must demonstrate that "counsel's representation fell
below an objective standard of reasonableness." Id. at 688.

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act or
> omission of counsel was unreasonable. . . . A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of counsel's
> challenged conduct, and to evaluate the conduct from
> counsel's perspective at the time. Because of the
> difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct

15

falls within the wide range of reasonable professional
assistance; that is, the defendant must overcome the
presumption that, under the circumstances, the challenged
action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Coe v. Bell, 161 F.3d 320,

342 (6th Cir. 1998) ("The specifics of what Coe claims an effective

lawyer would have done for him are too voluminous to detail here.

They also largely miss the point: just as (or more) important as

what the lawyer missed is what he did not miss. That is, we focus

on the adequacy or inadequacy of counsel's actual performance, not

counsel's (hindsight) potential for improvement."); Adams v. Jago,

703 F.2d 978, 981 (6th Cir. 1983) ("a defendant 'has not been

denied effective assistance by erroneous tactical decisions if, at

the time, the decisions would have seemed reasonable to the

competent trial attorney'").

A prisoner attacking his conviction bears the burden of

establishing that he suffered some prejudice from his attorney's

ineffectiveness. See Lewis v. Alexander, 11 F.3d 1349, 1352 (6th

Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir.

1992). "[A] court need not determine whether counsel's performance

was deficient before examining the prejudice suffered by the

defendant." Strickland, 466 U.S. at 697. If a reviewing court finds

a lack of prejudice, it need not determine whether, in fact,

counsel's performance was deficient. See id. at 697.

The two-part test articulated in Strickland applies to

challenges to guilty pleas based on ineffective assistance of

counsel. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57–58 (1985). Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" <u>Id.</u> at 56 (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970)); <u>see also</u> <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973). Moreover, "in order to satisfy [<u>Strickland</u>'s] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.[13]

An analysis of Terry's ineffective assistance claim is complicated by the petitioner's failure to refer to the standards for reviewing habeas claims on the merits, <u>see</u> <u>supra</u> pp. 6-11, and to analyze the decision of the Tennessee Court of Criminal Appeals

---

[13]     The Supreme Court emphasized that,

[i]n many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than going to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

<u>Id.</u> at 59.

in light of those standards. Terry has presented no argument that the decision of the Tennessee Court of Criminal Appeals on this issue was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). This is "a run-of-the-mill state-court decision applying the correct legal rules from [Strickland v. Washington and Hill v. Lockhart] to the facts of a prisoner's case" and, therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams v. Taylor, 529 U.S. at 406.

It is not clear whether Terry contends that the decision of the Tennessee Court of Criminal Appeals was an unreasonable application of Strickland and Hill. Although it can be inferred from the petition that Terry disagrees with the state-court decision, the prisoner makes no attempt to analyze the state-court's reasoning in light of Stricland and Hill. Moreover, Terry makes no effort to demonstrate that the state-court decision is objectively unreasonable, rather than merely incorrect. Williams, 529 U.S. at 410; see also supra p. 8 n.8.

Terry seems to contend that the decision of the Tennessee Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented at the postconviction hearing. 28 U.S.C. § 2254(d)(2). However, the petitioner fails to demonstrate that the factual findings of the Tennessee Court of Criminal Appeals were objectively unreasonable.

Terry does not address the state-court's conclusions that the DNA test established, by a 99.9% probability, that he was the father of the victim's child; that he did not appear to be mentally incompetent at the time of his change of plea hearing and that he did not inform his attorney that he had mental problems or was under the influence of medication; that he was informed at the change of plea hearing that he was pleading guilty to aggravated sexual battery and the elements of that offense were explained to him; that if he were convicted of rape of a child, the offense with which he was charged, he would have been subject to a sentence from fifteen (15) to twenty-five (25) years; and that he made a voluntary and intelligent guilty plea to the charge of aggravated sexual battery and was sentenced to a negotiated term of nine years. A review of the guilty plea and postconviction transcripts indicates that the state-court's factual findings are supported by the evidence. Thus, Terry has not satisfied his burden of demonstrating that the conclusions of the Tennessee Court of Criminal Appeals that his guilty plea was intelligent and voluntary and his attorney did not render ineffective assistance from which he suffered prejudice were objectively unreasonable.

Therefore, the Court GRANTS respondent's motion to dismiss the petition on this basis.

III. APPEAL ISSUES

The Court must also determine whether to issue a certificate of appealability ("COA"). The statute provides:

(1)  Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B)  the final order in a proceeding under section 2255.

(2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3)  The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253©; <u>see also</u> Fed. R. App. P. 22(b); <u>Lyons v. Ohio Adult Parole Auth.</u>, 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2254 petitioner may appeal without this certificate.

In <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" <u>Slack</u>, 529 U.S. at 484 (quoting <u>Barefoot</u>, 463 U.S. at 893 & n.4).

20

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[14]

---

[14]   By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

In this case, the Court need not consider whether the petitioner is entitled to a certificate of appealability of the statute of limitations issue as the petitioner is plainly not entitled to relief on the merits of his claim. Therefore, any appeal by this petitioner does not deserve attention, and the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2254 petitions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a habeas case, and thereby avoid the $455 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917,[15] the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal

---

[15]    Effective April 9, 2006, the appellate filing fee increased from $255 to $455.

would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. Accordingly, if petitioner files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 27th day of July, 2006.


s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE